UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN BENTON,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

Hon. Ellen S. Carmody

Case No. 1:18-cv-168

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 41 years of age on his alleged disability onset date. (PageID.283). Plaintiff successfully completed high school and worked previously as an electrician. (PageID.175). Plaintiff applied for benefits on September 20, 2014, alleging that he had been disabled since April 8, 2014, due to degenerative disc disease, neuropathy, arthritis, gout, diabetes, hypertension, lower extremity weakness, back weakness, and extreme pain. (PageID.283-89, 307). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.218-81).

On November 22, 2016, ALJ David Kurtz conducted a hearing with testimony being offered by Plaintiff and a vocational expert. (PageID.182-216). In a written decision dated January 19, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.167-77). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.22-27). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

3

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative disc disease of the lumbar spine; (2) history of a left knee meniscus tear; (3) diabetes mellitus; (4) peripheral neuropathy; and (5) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.169-71).

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he can frequently balance; (2) he can occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs; (3) he can never be exposed to hazards or climb ladders, ropes, or scaffolds; (4) he requires the use of a cane for long distances and uneven ground, but the collateral upper extremity can be used to carry small objects; and (5) he must be able to alternate positions for two to three minutes each hour and during scheduled breaks. (PageID.171).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 160,000 jobs in the national economy and approximately 22,500 jobs in the Michigan economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.207-15). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*,

819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I. **Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained copies of Plaintiff's medical treatment records. The ALJ described this evidence as follows:

> The record documents a history significant for two spinal surgeries on the lumbar and thoracic spines, a spinal cord stimulator implant surgery, bariatric surgery, and surgery to repair a torn meniscus of the left knee (Ex. 1F/2; 14F/9; 19F; 22F; 23F/28). The claimant has received ongoing pain management treatment including medications, epidural steroid injections, nerve block injections, and physical therapy (Ex. 5F; 6F; 20F; 24F). Additionally, an electromyogram study has shown radiculopathy of both legs and developing peripheral neuropathy (Ex. 14F/1). The extent of the claimant's back pain warrants reducing the claimant's functioning to a sedentary exertional level with additional postural limitations and the use of a cane for ambulation over long distances or uneven ground. His knee impairment warrants limiting his postural movements particularly with stooping, kneeling, crouching, and crawling. The claimant's instability that requires use of a cane warrants limiting the exposure to hazards and ladders, ropes, and scaffolds. However, the objective evidence does not contain findings supporting further limitation.
>
> Shortly after the alleged onset of disability, the claimant was seen on April 16, 2014 by neurosurgeon Steve Klafeta, MD, due to ongoing lower back pain and bilateral lower extremity pain (Ex. 3F/1). The examination revealed he had full strength without any significant deficits and a March 2014 imaging study had shown well placed hardware. Dr. Klafeta felt a revision surgery would not be beneficial and offered the option of a stimulator. Subsequent treatment notes show some improvement with pain with injections and a trial of the stimulator. For instance, in August 2014, the claimant reported experiencing eight out of 10 pain, but also reported having 40 percent relief of his pain for six weeks following an epidural injection (Ex. 5F/I). He also reported improvement with overall function. Similarly, in November 2014 the claimant reported

50 percent relief for six week[s] following an injection (Ex. 6F/4). He has reported pain relief up to 60 percent at times (Ex. 5F/4-18). Although he reported his pain was at a nine out of 10 on a pain scale, the examination revealed he was in no distress and had normal strength in all lower extremity muscle groups. There were some significant findings including abnormal reflex in the left Achilles, decreased sensation in the left lower extremity, and a mildly antalgic gait. The treatment note indicates the claimant requested a prescription for a cane (Ex. 6F/6).

An updated lumbar imaging study in January 2015 revealed normal postoperative changes at L5-S1 without recurrent herniation or other acute pathology, mild facet degeneration and retrolisthesis at L4-L5 that cause some mild but chronic stenosis, and minimal degeneration and retrolisthesis at L3-L4 without stenosis (Ex. 9F/67). In addition to the mild findings of the imaging study, the claimant had significant improvement in his pain once a spinal cord stimulator was implanted (Ex. 14F/9). A trial with the stimulator was begun in August 2015 and during an October 2015 consultation, the claimant reported having a lot of relief of the back and lower extremity pain with the stimulator (Ex. 11F/16; 14F/9). The claimant's neurosurgeon, Dr. Boyce noted the spinal cord stimulator trial was able to control the majority of the claimant's back and leg pain, and generally normal examination findings including symmetric muscle bulk and tone in the bilateral upper and lower extremities, full strength in upper extremities, slight decrease in strength in lower extremities, and intact sensation (Ex. 11F/17).

Although the claimant continued to report significant levels of pain, his providers regularly noted he was not in any distress. For instance in August 2015, he reported pain at a seven out of ten, but he was noted to not be in any distress (Ex. 13F/l7-18). Similar reports are noted throughout the pain management treatment for the remaining period at issue (Ex. 13F/3, 14-15; 20F/2-9).

Despite the claimant's use of a cane, he is regularly noted to have intact sensation, intact motor function, and normal strength (Ex. 13F/15; 24F/2). An updated imaging study of the claimant's thoracic spine in October 2015 showed normal findings and no significant degenerative changes, disc herniations, central canal stenosis or foraminal narrowing (Ex. 11F/15).

Following the implantation of the spinal stimulator, the claimant was doing well without any complaints (Ex. 11F/2). He had full strength in the right lower extremity and a very slight decrease of strength in the left lower extremity (Ex. 11F/3). His pain

7

management provider continued to note the claimant was neurologically stable and there were no upper motor neuron signs (Ex. 13F/3). There was very little change to his treatment regimen or the reported examination findings other than medication adjustments and refills (Ex. 20F; 21F; 24F). An electromyogram was performed in January 2016 revealing evidence of chronic lower lumbar radiculopathy on both sides and evidence of developing peripheral neuropathy (Ex. 14F/1-4). The claimant continued to receive medication management and injections, but no significant worsening is documented. In October 2016, he was examined by Eric Leep, DO, and reported his treatment provides mild relief (Ex. 24F/I). The examination revealed some tenderness, limitation with range of motion, and abnormal gait, but full strength, negative straight leg raise testing, and normal reflexes (Ex. 24F/2).

The claimant reported experiencing left knee issues in December 2014 and imaging studies revealed a medial meniscus tear (Ex. 9F/90-92; 23F/5). However, following an April 2015 left knee arthroscopy with partial medial meniscectomy, there is little mention of any knee complaints (Ex. 20F; 23F/28; 24F). I have accommodated for the claimant's knee impairment by limiting the stooping, kneeling, crouching, and crawling to only occasional.

The claimant is five feet and ten inches tall and has weight ranging from 198 to 290 pounds for a Body Mass Index between 28.4 to 41.6 (Ex. 4F/25; 20F/3; 11F/3; 13F/17). I have considered how weight affects his ability to perform routine movement and necessary physical activity within the work environment. I am aware obesity is a risk factor that increases an individual's chances of developing impairments in most body symptoms. Obesity can cause limitation of function and the effects of obesity may not be obvious. The combined effects of obesity with other impairments may be greater than might be expected without the disorder. I have considered any added or accumulative effects the claimant's obesity played on his ability to function, and to perform routine movement and necessary physical activity within the work environment. In spite of his weight, clinicians observed normal reflexes, sensation, and motor function as well as normal coordination and strength (Ex. 3F/l-3; 4F/23; 5F/2, 6-20; 6F/4; 11F/18; 24F/3).

At the hearing, the claimant alleged having side effects from medication including drowsiness. However, his pain management treatment notes regularly document him denying any drowsiness (Ex. 13F/2, 17; 20F/1).

(PageID.172-74).

**II.      The ALJ Properly Assessed the Medical Opinion Evidence**

On January 20, 2016, Dr. Girish Juneja stated that Plaintiff "is having difficulty sitting and/or standing on a regular basis." (PageID.880). The doctor further stated that "[t]he prognosis for [Plaintiff] going for gainful employment is poor." (PageID.880). The ALJ afforded little weight to this statement. (PageID.174). Plaintiff argues that he is entitled to relief on the ground that the ALJ's assessment of Dr. Juneja's statement is "ridiculous and unsupported." (PageID.1105-06). The Court interprets Plaintiff's argument as asserting that the ALJ failed to articulate good reasons for discounting the opinion of his treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human*

9

*Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

As noted above, Dr. Juneja's statement contained two separate provisions: (1) Plaintiff "is having difficulty sitting and/or standing on a regular basis"; and (2) "[t]he prognosis for [Plaintiff] going for gainful employment is poor." With respect to the first provision, the ALJ noted that the doctor's opinion was "vague" in that it failed to identify any specific functional limitation from which Plaintiff suffered. (PageID.174). The ALJ's assessment in this regard is certainly accurate. Moreover, the doctor's statement is not supported by the medical record. As to the latter portion of Dr. Juneja's statement, the ALJ correctly observed that such was entitled to no weight because the ultimate question whether Plaintiff is able to work is a matter reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1); 416.927(d)(1). In sum, the ALJ articulated good reasons, supported by substantial evidence, to discount the statement submitted by Dr. Juneja. Accordingly, this argument is rejected.

### III.     The ALJ Properly Evaluated Plaintiff's Impairments

Plaintiff next asserts that he is entitled to relief because the ALJ failed to find that he suffered from failed back syndrome and Multiple Sclerosis. At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error").

11

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the medical evidence of record. With respect to Plaintiff's argument that he suffers from "failed back syndrome," the ALJ recognized that Plaintiff suffers from a serious back impairment. While Plaintiff may disagree with the term the ALJ used to characterize his back impairment, the relevant question is whether the ALJ's RFC assessment, a matter on which Plaintiff bears the burden, is supported by substantial evidence. In this regard, Plaintiff has failed to identify evidence or articulate a persuasive argument that the ALJ's RFC is deficient. Instead, Plaintiff merely focuses on the fact that care providers have diagnosed him with "failed back syndrome," but the mere diagnosis of a condition says nothing about the extent to which such impairs a particular individual. *See, e.g., Hill v. Commissioner of Social Security*, 560 Fed. Appx. 547, 551 (6th Cir., Mar. 27, 2014) ("disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it").

As for Plaintiff's argument that he suffers from Multiple Sclerosis, as Defendant correctly observes, such is not accurate. Treatment notes authored by a Physician's Assistant on September 29, 2015, identify Multiple Sclerosis as one of her "assessments." (PageID.746-47). The results of the accompanying physical examination, however, are not inconsistent with the ALJ's RFC assessment. (PageID.746-47). Moreover, the results of a subsequent MRI examination of Plaintiff's brain were unremarkable and Plaintiff was not thereafter thought to experience Multiple Sclerosis. (PageID.733-44). Again, Plaintiff has failed to identify evidence or articulate a persuasive argument that the ALJ's RFC is deficient. Thus, even if the Court assumes that Plaintiff has been diagnosed with Multiple Sclerosis, as noted above, the mere fact that Plaintiff is diagnosed with an impairment is not enough to merit relief.

In sum, Plaintiff has failed to persuade the Court that his alleged diagnoses of failed back syndrome and Multiple Sclerosis impose on him any limitations which are inconsistent with his RFC. Thus, even if it is assumed that the ALJ erred in failing to find that Plaintiff's failed back syndrome or Multiple Sclerosis constituted a severe impairment, such does not call into question the substantiality of the evidence supporting the ALJ's decision. This argument is, therefore, rejected. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

IV.     **Undeveloped Argument**

Plaintiff concludes his brief with an argument based upon an alleged decision from the Seventh Circuit which, according to Plaintiff, stands for the proposition that it is error for an ALJ to credit the opinion of a state agency physician who failed to review all the medical evidence of record. Plaintiff's argument is undeveloped, however, as Plaintiff fails to articulate how this alleged standard was violated in this instance. Moreover, the citation Plaintiff provided is inaccurate, as it pertains to a Second Circuit decision concerning terrorism and international law.

*Vera v. Republic of Cuba*, 867 F.3d 310 (2d Cir 2017). The Court recognizes that Plaintiff also provided a citation to a decision by a Kentucky district court reaching the same conclusion. *Jones v. Astrue*, 808 F.Supp.2d 993 (E.D. Ky. 2011). However, Plaintiff failed to inform the Court that this portion of the *Jones* decision has been expressly rejected by the Sixth Circuit and several district courts within the Circuit. As one court observed:

> Handshoe relies on the standard used in *Jones v. Astrue*, 808 F. Supp. 2d 993, 996 (E.D. Ky. 2011), where the ALJ relied on a non-examining physician's evaluation when that physician had not examined the complete file of the claimant. However, as this Court has already held, this aspect of the holding in *Jones* is no longer good law. Numerous cases in this Circuit have already reached that conclusion. See, e.g., *Helm v. Comm'r of Soc. Sec. Admin*, 405 Fed.Appx. 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record."); *Fry v. Comm'r of Soc. Sec.*, 476 Fed.Appx. 73, 75 (6th Cir. 2012) (rejecting claimant's argument that non-examiner's "opinion was inadequate because it was based on a review of the record before she began treatment with [another doctor]," and holding that "the ALJ properly considered [the non-examiner's] report as opinion evidence."); *Keith v. Colvin, 2016 WL 1212068*, at *5 (M.D. Tenn. Mar. 29, 2016) ("Despite [the claimant's] reliance on *Jones v. Astrue* ... for the proposition that the opinion of a non-examining expert who does not examine a complete record does not comprise substantial evidence, this court is bound only by the Sixth Circuit precedent set forth in *Helm* and *Fry*."); *Skaggs v. Colvin*, 2016 WL 782309, at *5 (E.D. Ky. Feb. 26, 2016) ("[W]hile the District Court in Jones seems to suggest that, when an ALJ affords more weigh to a non-examining physician over an examining physician, only the most recent opinions are credible since they account for all preceding opinions, the Sixth Circuit has established that no such completeness rule or requirement exists."); *Price v. Colvin*, 2016 WL 782259, at *3 (E.D. Ky. Feb. 26, 2016) ("*Jones* relied on a Social Security Ruling that did not create a definitive rule, and, more importantly, the Sixth Circuit has made it clear that no such rule exists.").

*Handshoe v. Berryhill*, 2017 WL 1097197 at *4 (E.D. Ky., Mar. 23, 2017).

Accordingly, Plaintiff's undeveloped argument, based upon authority rejected by the Sixth Circuit, is rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Dated: March 29, 2019     /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge